**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ROBERT F. CONNOLLY,

                          Plaintiff,

    - v -                                            Civ. No. 6:02-CV-1303
                                                                      (LEK/RFT)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

**APPEARANCES:**                                    **OF COUNSEL:**

OFFICE OF MARK A. SCHNEIDER[1]          MARK A. SCHNEIDER, ESQ.
Attorney for Plaintiff
57 Court Street
Plattsburgh, New York 12901

SOCIAL SECURITY ADMINISTRATION      DENNIS J. CANNING, ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**MEMORANDUM DECISION and ORDER**

In this action, Plaintiff Robert Connolly moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying his application for disability benefits. Dkt. No. 1, Compl. Mr. Connolly first filed his application for disability benefits in June 1996, and now, after more than ten years have elapsed, he is being asked by the Government to, once again, go back to the Social Security Administration ("SSA") and sit through yet another hearing before an Administrative Law Judge ("ALJ"). Dkt. No. 24, Def.'s Mot. for Remand. Plaintiff opposes

---

[1] On June 24, 2008, this Court appointed Mark A. Schneider, Esq., as *pro bono* counsel for Plaintiff for District Court purposes only. Dkt. No. 25.

Defendant's Motion for a Remand and seeks to have benefits awarded based upon the existing record. Based upon the following discussion, this Court recommends that the Commissioner's pending Motion for Remand be **granted** and that this case be remanded pursuant to Sentence Six for an **expedited** hearing.

## I. BACKGROUND

Born on June 4, 1947, Robert Connolly filed for disability benefits on May 16, 1996, alleging disability due to lumbosacral disease and herniated disc.[2] Dkt. No. 11, Admin. Transcript [hereinafter "Tr."] at pp. 60-63. He had been previously employed as a police officer in New York City from April 1973 until December 1987, when he was forced to resign on disability. *Id*. at p. 74. Connolly's medical and employment records document a history of repeated injuries to his lower back between 1977 and 1994. *Id*. at pp. 229-32, 235, 239, 241, 244-48, 250, 252, 261-63, 267, & 272. In 1977 and 1980, while on duty, Connolly was kicked in the back and sustained injuries. *Id*. at pp. 146, 200-01, 272, & 314-21. Then, on May 6, 1981, Connolly was injured in a car accident while performing his officer duties. *Id*. at pp. 146, 201, & 280-83. As a result, he suffered a lumbrosacral and cervical strain. *Id*. On June 30, 1983, also while performing his officer duties, Connolly was again involved in a motor vehicle accident, injuring his head, neck, and back. *Id*. at pp. 201, 218, 252, & 277-79. In 1985, Dr. Edelman, a district surgeon, opined that Connolly suffered from lumbrosacral syndrome and could never return to full duty status, at which point Connolly was placed on restrictive duty. *Id*. at pp. 136-37. Connolly's restrictive duty constituted work as a fingerprint technician, and he continued in this capacity until November 23, 1987, when his disability application was approved by the Medical Board Police Pension Fund. *Id*. at pp. 102-03; *see also id.* at pp. 57 & 70. Then on December 3, 1987,

---

[2] It appears that his application was subsequently amended on June 13, 1996. Dkt. No. 11, Admin. Tr. [hereinafter "Tr."] at pp. 57-59. While minor details are amended therein, none are related to the issues on appeal.

Connolly's disability retirement application from the New York City Police Department was certified based on discogenic disease of the lumbosacral spine with a right-sided herniation of L5/S1. *Id*. at p. 129. Connolly did not work from 1987 to 1994, at which time he briefly worked as a school bus driver, but had to stop working due to the pain he experienced and an inability to perform the functions of the job. *Id*. at pp. 463-65.

### B. Procedural Background

The history of Connolly's Social Security Disability Insurance Application spans over a decade. Connolly's May 16, 1996 disability application was initially denied on July 17, 1996, and on reconsideration on October 7, 1996. Tr. at pp. 34-38 & 42-44. Thereafter, Connolly was bounced back and forth from ALJ hearings to this District. Each ALJ issued a written opinion, each rife with its own nuances and variations. A brief overview is discussed below.

### 1st Hearing — ALJ Hastings Morse

After his application for reconsideration was denied, a hearing was held on September 10, 1997 (Tr. at pp. 22-33), before ALJ Hastings Morse who, on September 19, 1997, issued a decision finding Connolly could perform his past work as a fingerprint technician and therefore was not disabled (Tr. at pp. 12-21). Using the five-step disability analysis,[3] ALJ Morse determined the following: 1)

---

[3] In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations ("Regulations"). 20 C.F.R. § 404.1520. At Step One the Commissioner "considers whether the claimant is currently engaged in substantial gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If yes, he or she is not disabled and the inquiry ends. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment(s) that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant suffers from a severe impairment(s), the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at § 404.1520(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment, the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner determines the claimant's residual functional capacity ("RFC"). Then, at Step Four the Commissioner considers whether the claimant has the RFC to perform his or her past relevant work despite the existence
(continued...)

Connolly had not engaged in any substantial gainful employment since November 23, 1987, the onset disability date ("ODD"); 2) his musculoskeletal impairment is severe; 3) but such impairment does not meet nor equal any of the Listed Impairments in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) Connolly retains the residual functional capacity ("RFC") to sit, stand, and walk for six hours per day and perform light lifting of no more than twenty pounds; with this RFC, he is able to perform his past relevant work as a fingerprint technician and is therefore not disabled. *Id*. at pp. 12-21.

Two years later, on September 17, 1999, the Appeals Council denied further review, thus rendering ALJ Morse's decision the final determination of the Commissioner. *Id*. at pp. 3-4.[4]

On November 19, 1999, Connolly began a federal action in this District seeking review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision. *Connolly v. Comm'r of Soc. Sec.*, Civ. Case No. 6:99-CV-2025 (LEK/RWS). In a Report-Recommendation and Order, dated April 25, 2001, the Honorable Ralph W. Smith, Jr., then-United States Magistrate Judge, recommended that the case be remanded back to the SSA pursuant to sentence four of 42 U.S.C. § 405(g). *Id*. at pp. 447-53. In his decision, Judge Smith noted that the New York City Police Department had determined in 1987 that Plaintiff was permanently disabled and incapable of performing his work, which at that time had been relegated to fingerprint technician. Yet, ALJ Morse failed to mention this conclusion when he determined that Plaintiff could return to his past work as a fingerprint technician. *Id*. at p. 452. Such omission was deemed an error warranting a remand wherein the SSA would be directed to consider and

---

[3](...continued)
of severe impairments. 20 C.F.R. § 404.1520(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(f).

[4] It is not clear what caused the two-year delay from the date Connolly requested review of the ALJ's decision and the Appeals Council's issuance of its denial.

explain the weight assigned to the Police Department's finding and discuss what effect such determination would have on the conclusion that Connolly could perform his past work. *Id*. Judge Smith further recommended that, upon remand, the SSA should discuss the factors that the Police Department considered and "evaluate whether these factors should lead the Commissioner to reach the same result." *Id*. at p. 453. Those recommendations were adopted in full on May 21, 2001, by the Honorable Lawrence E. Kahn, United States District Judge, the case was remanded back to the SSA, and the 1999 civil action was closed in this Court. *Id*. at pp. 444-46.

**2nd Hearing — ALJ Terence Farrell**

Over five months later, on November 8, 2001, the Appeals Council remanded the case back to an ALJ; however, within its remand, it did not provide the specific instructions directed by the District Court. Tr. at pp. 514-15. On January 4, 2002, a hearing was held before ALJ Terence Farrell (Tr. at pp. 454-513), who, on March 25, 2002, issued another unfavorable decision finding that Connolly was not disabled (Tr. at pp. 431-43).

Using the five-step disability evaluation, ALJ Farrell found that 1) Connolly had not engaged in any substantial gainful activity since his alleged ODD; 2) he has a severe medically determinable impairment, namely degenerative lumbar disease, but his cervical sprain/strain, depression, and sleep apnea are not severe; 3) his severe impairment did not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) he retains the RFC to perform a reduced range of sedentary work wherein he could a) occasionally lift, carry, push, and pull up to ten pounds; b) frequently lift, carry, push, and pull smaller objects (such as files and ledgers); c) stand or walk for four hours with normal breaks, with no standing more than twenty-to-thirty minutes, and no walking more than one-to-two blocks at a time and only on level surfaces; d) sit for four hours with

normal breaks, but no sitting more than twenty-to-thirty minutes; and e) occasionally balance, climb, crawl, crouch, stoop, and kneel.  In light of this RFC, ALJ Farrell determined that Plaintiff could not perform his past work as a corrections officer and deferred the question of whether he could perform past work as a fingerprint technician to a vocational expert ("VE"), who testified that Connolly could not perform such work; yet 5) relying upon the VE's testimony and using the Medical Vocational Guidelines as a framework, ALJ Farrell concluded there was work available in the national and local economies which Plaintiff could perform including work as a purchasing agent or buyer, hotel clerk, dispatcher, or product inspector.  *Id*. at pp. 431-43.

On August 16, 2002, the Appeals Council denied further review, thus rendering ALJ Farrell's decision the final decision of the Commissioner.  Dkt. No. 1.  Thereafter, three years after his first appearance in federal court, Plaintiff initiated the present federal action *pro se* seeking review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  On April 11, 2003, the Commissioner, through counsel, filed his Answer along with the Administrative Transcript.  Dkt. Nos. 10-11.  As set forth in the Court's General Order 18, which governs Social Security Appeals, Plaintiff submitted his *pro se* Brief detailing the reasons he believes he is entitled to relief.  Dkt. No. 15.  In response, the Defendant filed a Motion for Remand pursuant to Sentence Six of 42 U.S.C. § 405(g).  Dkt. No. 16.  Counsel explained that in preparing his Brief and upon closer inspection, it appeared to him that the Administrative Record that was supplied to the Court was incomplete.  Specifically, the Record did not appear to contain the entirety of the testimony of the vocational expert.

On June 20, 2006, this Court issued a Report-Recommendation and Order, wherein we also expressed concern that the Administrative Record may not be complete.  Dkt. No. 20.  This Court agreed with the Commissioner's assessment that the ALJ hearing appeared to abruptly end during the

course of the Plaintiff's representative's examination. There was no statement from the representative confirming that he had no further questions, nor a statement from the ALJ concluding and closing the record. We noted that because "the burden shifted to the Commissioner at Step Five, and because the ALJ relied on the VE's testimony, the Court is unable to ascertain from this incomplete record whether substantial evidence supports the ALJ's decision." *Id*. at p. 4. We therefore recommended a Sentence Six remand so that another hearing could be conducted; we further requested that this matter be expedited in the SSA. *Id*. at p. 5. On August 31, 2006, Judge Kahn adopted those recommendations in full, and the case was remanded back to the SSA while the civil action remained open in this Court. Dkt. Nos. 21 & 22.

### 3rd Hearing — ALJ Thomas Zolezzi

On September 28, 2006, the Appeals Council remanded the case back to an ALJ for further proceedings. Tr. at pp. 577-79. A hearing was then held on January 8, 2007, before ALJ Thomas Zolezzi who, on February 7, 2007, issued a decision finding Connolly could not perform his past work as a fingerprint technician, but could perform other work available in the national and local economy and therefore was not disabled. *Id*. at pp. 594-604. Specifically, ALJ Zolezzi determined the following: 1) Connolly had not engaged in any substantial gainful employment since his alleged ODD; 2) his lumbar spine disorder is severe, but his cervical sprain, depression, and sleep apnea are not severe; 3) his back impairment did not meet nor equal any of the Listed Impairments in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) he retains the RFC to perform the following: a) occasionally lift and carry up to twenty pounds; b) frequently lift and carry ten pounds; c) stand or walk for six hours in an eight-hour workday, with the ability to change positions as needed using a sit/stand option every twenty to thirty minutes; and d) occasionally, but not frequently, balance, crawl, stoop,

and kneel, but never climb ladders or scaffolding. In light of this RFC, and relying upon the testimony of the VE, the ALJ determined that Plaintiff could perform his past relevant work as a fingerprint technician; however, 5) in providing Plaintiff the benefit of the doubt, he continued the disability analysis and found that in light of the VE testimony and using the Medical-Vocational Rules as a framework, significant work existed in the national economy that Plaintiff could perform, including work as a dispatcher, tour guide, new account clerk, and coat room attendant. *Id*. On April 12, 2008, the Appeals Council denied further review, thus rendering ALJ Zolezzi's decision the final decision of the Commissioner. *Id*. at pp. 607-08.

After the Appeals Council issued its decision, a supplemental record should have been sent to this Court for further review. Instead, on June 18, 2008, the Commissioner filed another Motion for Remand with this Court. Dkt. No. 24. This Motion comes almost two years after Judge Kahn issued a remand directing that this entire matter be expedited. Within the current Motion, the Commissioner explains that he is unable to file the record of the ALJ proceedings because the first compact disc provided to the attorney was blank, a duplicate compact disc containing the hearing testimony was damaged, and the laptop which contained the testimony had crashed and the hearings contained therein were "wiped." Dkt. No. 24-2, Patrick J. Herbst Decl., dated June 17, 2008, at ¶¶ 6-8. Thus, the Commissioner seeks another remand so that a fourth ALJ hearing could be held in this matter.

On June 24, 2008, this Court issued an Order appointing *pro bono* counsel, Mark A. Schneider, Esq., on behalf of Robert Connolly. Dkt. No. 25. As directed, Mr. Schneider responded to the Commissioner's Motion, Dkt. No. 28, to which the Commissioner filed a Reply, Dkt. No. 29. The matter is now fully briefed.

## IV. DISCUSSION

Remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order.") (cited in *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999)). "Upon a finding that an administrative record is incomplete or that an ALJ has applied an improper legal standard, we generally . . . remand the matter to the Commissioner for further consideration." *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000), *superceded by statute on other grounds*, (citation omitted).

We previously found that the last administrative record was incomplete, thus requiring a remand. Now, with the absence of this supplemental record, we are left with the same incomplete record. In rendering their respective decisions, both ALJ Farrell and Zolezzi relied heavily upon the testimony of the VE's who appeared before them. In addition to the absence of the supplemental record, both ALJ Farrell and Zolezzi failed to apply the Treating Physician Rule correctly, as explained more fully below, thus further justifying a remand.

Prior to assessing at Steps Four and Five whether a claimant can return to his past work or perform any other work, respectively, the Commissioner is charged with assessing a claimant's RFC as a basis for determining the particular types of work the claimant may be able to do despite the existence of physical and/or mental impairments.[5] *See* 20 C.F.R. § 404.1545(a); 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(c). In qualifying work in the national economy, the Regulations classify

---

[5] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a) and 416.945(a).

and define jobs according to the physical exertion requirements as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id*. at § 404.1545(a).

In Connolly's case, each ALJ who has reviewed this medical record has rendered a different RFC assessment. The incongruity is rather astounding considering that neither the record nor the law has materially changed, and yet, the restatement of the medical history is about all these ALJs can agree upon. On September 19, 1997, ALJ Morse found that Plaintiff couldn't lift more than twenty pounds, but could sit, stand, and walk for six hours without limitation, and could perform light lifting. Tr. at p. 20. Years later, ALJ Farrell determined, based on the same record, that prior to December 31, 1994, Connolly had the following RFC:

> occasionally lift, carry, push or pull 10 pounds, frequently lift, carry, push and pull smaller objects such as files, ledgers, books papers and so forth; stand and walk up to 4 hours out of a workday with normal breaks, with no standing more than 20 to 30 minutes at a time, and no walking more than one or two blocks at a time; sit up to 4 hours in a workday with normal breaks, with no sitting more than 20 to 30 minutes at a time; occasionally balance, climb, crawl, crouch, stoop and kneel, and walking limited to level surfaces.

*Id*. at pp. 439-40.

Thus, ALJ Farrell determined that Connolly could perform a significant range of sedentary work. *Id*. at p. 440. Yet, after reviewing the very same record and repeating almost verbatim ALJ Farrell's recitation of the medical record,[6] ALJ Zolezzi determined that through December 31, 1994, Connolly retained the RFC to:

---

[6] Pages four through six of ALJ Zolezzi's opinion is a verbatim, carbon copy of several paragraphs included in ALJ Farrell's opinion. *Compare* Tr. at pp. 431-43 *with* Tr. at pp. 594-604.

>occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds; sit, stand or walk 6 hours each in an eight-hour workday; with the ability to change positions as needed using a sit/stand option every 20 to 30 minutes; occasionally, but not frequently, balance, crawl, stoop and kneel; but with no climbing of ladders or scaffolding.

*Id*. at p. 600.

Thus, ALJ Zolezzi determined Plaintiff retained the capability to perform, with limitations, light work.

*Id*. at p. 603.

We understand that different ALJs can view medical evidence differently. But it seems odd that there should be such stark differences in all three assessments. In any event, in making these varied assessments, ALJs Farrell and Zolezzi made glaring errors, the most prominent of which is the weight accorded to the opinion of Dr. Robert Fleming, who was one of the police district surgeons that treated Plaintiff for his back impairment during a portion of the relevant time period.

>On May 4, 1989, Dr. Fleming wrote:
>
>Robert Connolly sustained an injury to his lower back resulting in a herniation of L5-S1 disc. He has spasmotic pain and numbness associated with rightsided radiculopathy. These symptoms have greatly inhibited Mr. Connolly's ability to stand or sit for even short periods of time. As a result he has been totally disabled, preventing him from any form of employment since 12-31-87 until present. In my medical opinion, this is a progressively degenerating condition which will most probably prevent him from any future employment.

Tr. at p. 390.

Despite irrefutable proof in the medical record regarding the type of doctor he was,[7] both Farrell and

---

[7] In Connolly's disability insurance application, he lists Dr. Robert Fleming as a treating physician whom he last saw on May 4, 1989. Tr. at p. 71. Connolly indicated that Dr. Fleming treated him for herniated disks and a degenerative lower back problem. *Id*. Most notably, Connolly indicated that Dr. Fleming prescribed him physical therapy and prescriptions for pain, the latter of which a chiropractor cannot under law do. He also provided an address that mirrors the address for the New York City Police Department Medical Division. *Id*. at p. 101. Other references to Dr. Fleming in the record can be found at the following pages: 152 (note from Dr. Fleming, dated Oct. 22, 1987, diagnosing Plaintiff with low lumbar syndrome, precluding his ever returning to full duty); 168 (report from Dr. Magliato, Orthopedic District Surgeon, dated May 29, 1987, referencing the fact that Connolly has been seeing "Dr. Fleming his District Surgeon"); 204 (note from Dr. Fleming, District Surgeon, dated Dec. 1, 1986, authorizing Plaintiff's return from sick leave to limited capacity with no patrol and no heavy lifting); 239 (sick report, dated Nov. 12, 1986, listing Dr. Fleming as a district surgeon); 336 (Dr. Fleming listed as district surgeon); and 391 (Dr. Fleming, District Surgeon, referral, dated Nov. 3, 1986, for an orthopedic consult).

Zolezzi inexplicably refer to Dr. Fleming as a chiropractor and assert that his opinion is not accorded controlling weight because he is not an acceptable medical source. *Id*. at pp. 437-38 & 601-02. Such classification was patent error and the treatment of Dr. Fleming's opinions in this regard violated the Treating Physician Rule.

Under the Regulations, a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa v. Callahan*, 168 F.3d at 78-79.[8] However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1527(e)(1) (Commissioner provides the ultimate decision on disability). The treating physician doctrine recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time non-examining, non-treating physician. 20 C.F.R. § 404.1527(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

In analyzing a treating physician's opinion, "the ALJ cannot arbitrarily substitute his [or her] own judgment for competent medical opinion." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). Furthermore, when weighing all medical opinions and assessing what weight to accord, "[t]he duration

---

[8] A "treating physician" is the claimant's "own physician, osteopath or psychologist (including outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation, and who has or had an ongoing treatment and physician-patient relationship with the individual." *Jones v. Apfel*, 66 F. Supp. 2d 518, 524-25 (S.D.N.Y. 1999) (quoting *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988)).

of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof" are considerations. *Schisler v. Sullivan*, 3 F.3d at 568; 20 C.F.R. § 404.1527(d)(1)-(6); *see also Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998). In the event the ALJ does not give controlling weight to the treating physician, he must specifically state the reasons for doing so. 20 C.F.R. § 404.1527(d)(2). Failure to apply the appropriate legal standards for considering a treating physician's opinion is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of a treating physician's opinion. *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987); *see also Barnett v. Apfel*, 13 F. Supp. 2d at 316-17.

Dr. Fleming's opinion provides a crucial assessment of the nature and severity of Plaintiff's impairment and its limiting effects on his capabilities during the relevant time period. Such opinion is well supported by diagnostic tests and the opinions of other examining/treating physicians. For example, an electromyogram (EMG) conducted on June 25, 1987 revealed findings "consistent with a left Lumbar Radiculopathy."[9] Tr. at p. 167. A thermogram of the lumbar spine, conducted on July 6, 1987, had abnormal results "consistent with right sided L5 sensory nerve fiber irritation and/or damage." *Id*. at p. 158. And, a computerized tomography (CT) of the lumbar spine conducted on October 27, 1987, revealed right-sided herniation of the L5/S1 intervertebral disc. *Id*. at p. 155.

On May 29, 1987, Henry J. Magliato, M.D., Orthopedic District Surgeon, assessed that Connolly had chronic low back syndrome and determined that he was disabled for police duty, though he opined he may be able to resume limited capacity soon. *Id*. at pp. 168-69. ALJ Farrell gave great weight to Dr. Magliato's opinion, *id*. at p. 439, while ALJ Zolezzi gave no weight to the opinion regarding disability, *id*. at p. 601. On June 16, 1987, Joseph J. La Mura, M.D., an orthopedic specialist,

---

[9] Radiculopathy is a disease of the nerve roots. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1404 (28th ed. 1994).

*-13-*

examined Plaintiff and opined that he was "temporarily and totally disabled due to lumbo sacral derangement." *Id*. at p. 166. ALJ Farrell gave great weight to this opinion as a treating physician, *id*. at p. 439, but ALJ Zolezzi gave no weight to the opinion of disability, *id*. at p. 601. On June 25, 1987, Paul Slotwiner, M.D., neurological consultant, examined Connolly, without the benefit of tests performed (x-rays, CT, EMG, etc), and assessed lumosacral radiculopathy. He recommended restricted duty and that Plaintiff should avoid prolonged standing and heavy lifting. *Id*. at pp. 162-63. ALJ Farrell does not indicate the weight given to Dr. Slotwiner's opinion, but ALJ Zolezzi stated that this assessment was consistent with his assessment of light duty RFC. *Id*. at p. 601. On October 7, 1987, Joe F. Kalangie, M.D., examined Plaintiff and observed that his symptoms were aggravated by sitting for fifteen to twenty minutes, driving, or walking one or two blocks, and recommended continued physical therapy. He opined a permanent partial disability of LS spine. *Id*. at p. 156. ALJ Farrell gave Dr. Kalangie's assessment great weight, *id*. at p. 156, while ALJ Zolezzi gave no weight to the opinion on disability, *id*. at p. 601.

On November 23, 1987, based in part on the opinions of Drs. Slotwiner and Magliato, the Medical Board Police Pension Fund Article II approved Connolly for accident disability, *id*. 202-03, and Connolly was thereafter forced to retire by reason of disability, *id.* at p. 129. Connolly did not work nor visit with any doctors from the date of his retirement. Then, in early 1995, after leaving his job as a bus driver, Connolly began seeing Emilio Ejercito, M.D. *Id*. at pp. 352-61. On March 21, 1995, Dr. Ejercito reviewed the results of an EMG taken that same date and determined it to be consistent with "increased membrane irritability (radiculopathy) at L5-S1 root levels on the right side." *Id*. at p. 355. He opined that Connolly's radicular symptoms prevented him from driving a school and rendered him disabled; a regiment of physical therapy was prescribed. *Id*. Over the next couple of

months, Connolly reported some relief from the physical therapy, however, Dr. Ejercito noted on August 1, 1995, that his condition has remained about the same for the prior month. *Id*. at p. 352. In addition to prescribing pain medication and a home program of heat and exercises, Dr. Ejrecito recommended a job capacity evaluation. Years later, on January 19, 1998, Plaintiff was examined by Marc H. Apfel, M.D. After reviewing the medical record and examining Plaintiff, Dr. Apfel opined that Plaintiff had reached "maximum medical improvement" and that his "condition is permanent and stationary. He will not improve. The patient appears to be disabled, secondary to his medical record, subjective complaints and objective findings with regard to diagnostic testing." *Id*. at p. 418.

The medical record also contains the opinion of Donna White, M.D., the state agency reviewing physician. *Id*. at pp. 84-91. After reviewing the medical record, Dr. White opined that Connolly could lift and carry up to twenty pounds occasionally and ten pounds frequently. *Id*. at p. 85. She also found that Connolly could sit, stand, or walk for six hours in an eight-hour workday without restriction and was also unlimited in his ability to push or pull. *Id*. With regard to postural limitations, Dr. White opined that Connolly could occasionally climb ramps/stairs/ladders/ropes/scaffolds and could occasionally stoop; she further found that Connolly could frequently balance, crouch, and crawl. *Id*. at p. 86. Despite the fact that Dr. White did not examine Connolly, and that her opinion conflicted with other treating physician opinions as well as the objective medical tests, ALJ Zolezzi gave great weight to part of her RFC assessment. *Id*. at p. 600. ALJ Zolezzi determined that the portion of Dr. White's opinion regarding lifting and carrying was "well-supported." *Id*. However, her assessment of his sitting and standing capability conflicted with Connolly's treating physicians' opinions and Connolly's testimony, and was therefore disregarded. *Id*. at p. 601.

It also appears that ALJ Zolezzi discounted the opinions of Drs. Kalangie, Maglioto, LaMura

because they opined on the ultimate question of disability, which is exclusively reserved to the Commissioner. *Id.* at p. 601. This is a misstatement of the applicable legal standard. While it is true that the ultimate decision of disability rests with the Commissioner, it does not follow that a treating physician's opinion with regard to the claimant's disability status is to be ignored outright. "[A]djudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." Social Security Ruling 96-5p, 1996 WL 374183, at *2-3, *Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner* (S.S.A. 1996). While such opinion could not be given controlling weight, it may not be ignored and the adjudicator is "required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. . . . [and] determine the extent to which the opinion is supported by the record." *Id.*

Each of Connolly's treating physicians during the relevant time period opined on the severity, nature, and limiting effect of his back condition. They similarly opined that his condition was permanent and unlikely to improve. To discount these opinions outright without explanation was reversible error. Furthermore, the dismissal of Dr. Fleming's opinion based upon the type of doctor he was incorrectly perceived to be was reversible error. It is clear that Dr. Fleming's assessments and opinions regarding the nature and severity of Connolly's impairments are similar to and well supported by the opinions rendered in medical record. Failing to give controlling weight to Dr. Fleming's opinion was also reversible error.

Thus, in recommending granting the Defendant's Motion for Remand, we further recommend that the SSA be directed, on remand, to give controlling weight to Dr. Fleming's medical source

statement as it relates to the nature and severity of Connolly's impairments and that some consideration be given to the disability assessments by Drs. LaMura, Kalangie, and Maglioto. It is imperative that any remand be accompanied by a directive that an ALJ hearing be expedited with the entire case returning to this Court, if necessary, within four to six months. Mr. Connolly deserves some finality to his decade-old disability application.

As a final note, the Court appointed Mark Schneider as *pro bono* counsel for District Court purposes only. Mr. Connolly has been well served thus far by this appointment. In light of the fact that it is this Court's recommendation to keep this District matter open, and in the interests of justice, the Court asks that Mr. Schneider continue his representation of Mr. Connolly in both the remand to the SSA and, if necessary, upon return to this Court.

**WHEREFORE**, based on the foregoing, it is hereby

**RECOMMENDED**, that Defendant's Second Motion for Remand (Dkt. No. 24) be **granted** and this case remanded for expedited rehearing pursuant to the Sixth Sentence of 42 U.S.C. § 405(g), with a return to this Court, if necessary, within four to six months; and it is further

**RECOMMENDED**, that should the above recommendation be adopted, that Mr. Schneider continue to serve as *pro bono* counsel for Mr. Connolly upon his return to the SSA and, if necessary, to this Court; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b) & 6(a).

Dated: July 19, 2011
       Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge